UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

TREVIS L. FUNCHES,

                        Plaintiff,

       -against-                             9:17-CV-1292 (LEK/DJS)

ANTHONY RUSSO, *et al.*,

                        Defendants.

---

**DECISION AND ORDER**

## I.    INTRODUCTION

This matter comes before the Court following a report-recommendation filed on

November 2, 2018, by the Honorable Daniel J. Stewart, U.S. Magistrate Judge, pursuant to

28 U.S.C. § 636(b) and Local Rule 72.3. Dkt. No. 39 ("Report-Recommendation"). Defendants

Jeremy Greene, Jeff McKoy, Cheryl Morris, A. Polizzi, and Anthony Russo timely filed

objections. Dkt. No. 40 ("Objections"); see also Dkt. No. 42 ("Opposition to Objections").

## II.    LEGAL STANDARD

Within fourteen days after a party has been served with a copy of a magistrate judge's

report-recommendation, the party "may serve and file specific, written objections to the

proposed findings and recommendations." Fed. R. Civ. P. 72(b); L.R. 72.1(c). If objections are

timely filed, a court "shall make a de novo determination of those portions of the report or

specified proposed findings or recommendations to which objection is made." § 636(b).

However, if no objections are made, or if an objection is general, conclusory, perfunctory, or a

mere reiteration of an argument made to the magistrate judge, a district court need review that

aspect of a report-recommendation only for clear error. Barnes v. Prack, No. 11-CV-857,

2013 WL 1121353, at \*1 (N.D.N.Y. Mar. 18, 2013); <u>Farid v. Bouey</u>, 554 F. Supp. 2d 301,

306–07, 306 n.2 (N.D.N.Y. 2008), <u>abrogated on other grounds by</u> <u>Widomski v. State Univ. of</u>

<u>N.Y. at Orange</u>, 748 F.3d 471 (2d Cir. 2014); <u>see also</u> <u>Machicote v. Ercole</u>, No. 06-CV-13320,

2011 WL 3809920, at \*2 (S.D.N.Y. Aug. 25, 2011) ("[E]ven a *pro se* party's objections to a

Report and Recommendation must be specific and clearly aimed at particular findings in the

magistrate's proposal, such that no party be allowed a second bite at the apple by simply

relitigating a prior argument."). "A [district] judge . . . may accept, reject, or modify, in whole or

in part, the findings or recommendations made by the magistrate judge." § 636(b).

## III.    DISCUSSION

The Court assumes familiarity with the facts relevant to the present dispute, which were

described in the Report-Recommendation. <u>See</u> R. & R. at 2–3.

On August 13, 2018, Defendants filed a Rule 12(b)(6) motion, which argued that both

Plaintiff's Fourteenth Amendment due process claims against Polizzi and Greene and Plaintiff's

First Amendment retaliation claims against Russo, Morris, and McKoy should be dismissed. Dkt.

No. 30 ("Motion to Dismiss"); <u>see also</u> Dkt. Nos. 33 ("Opposition"); 34 ("Reply"). The

Magistrate Judge disagreed, and recommended that the Motion to Dismiss be denied in its

entirety. R. & R. at 13. Specifically, the Report-Recommendation found with regard to Plaintiff's

due process claim that the amended complaint, Dkt. No. 10 ("Amended Complaint"), sufficiently

alleged a protected liberty interest and deprivation of due process to survive Defendants' motion,

R. & R. at 4–8. The Magistrate Judge also held that Plaintiff's allegation that Defendants

interfered with his privacy and correspondence privileges satisfied Plaintiff's burden for pleading

a First Amendment retaliation claim. Id. at 8–12. Finally, the Magistrate Judge found that

Defendants were not entitled to qualified immunity. Id. at 12–13.

Defendants now raise four sets of objections to the Report-Recommendation. Defendants'

first, second, and fourth sets of objections assert that the Magistrate Judge "applie[d] the

incorrect standards" with regard to (1) Plaintiff's due process claim; (2) Plaintiff's retaliation

claim against Russo and Morris; and (3) Defendants' qualified immunity argument. Objs. at 1–6,

8–10. Defendants' third set of objection asserts that the Report-Recommendation "err[ed] in

recommending that Plaintiff's First Amendment claim against [] McKoy [should] survive,"

because the Amended Complaint nowhere alleged that McKoy retaliated against Plaintiff. Id.

at 6–8.

### A. First Set of Objections: Due Process

Defendants' first set of objections raise certain due process arguments that are the mirror

image of arguments already made in the Motion to Dismiss. Compare Mot. Dismiss at 9–10

("[Plaintiff] alleges only that the water for drinking and bathing [in the SHU] was 'discolored.'

. . . This is insufficient to state a liberty interest. Moreover, the Exhibits to the Complaint . . .

demonstrate that the water in the SHU was no different from the water in the entire [prison]

water system, which was tested and had met all New York State Department of Health

requirements for potable water."), with Objs. at 2 ("[T]he *sole* allegation made by Plaintiff is that

the water in the [Special Housing Unit ("SHU")] was discolored, and the exhibits to the

Complaint demonstrate, conclusively, that the allegedly discolored water in the SHU . . . was

present at the entire facility . . . and was not unsafe. Accordingly, the Complaint itself refutes

Plaintiff's claim that he was subjected to atypical and significant hardship in the SHU."), and

Mot. Dismiss at 13 ("By setting forth the evidence relied on at Plaintiff's disciplinary hearing, the Complaint itself demonstrates that the 'some evidence' standard is met."), with Objs. at 3 ("[T]he Complaint itself and the exhibits to the Complaint set forth the evidence relied on for Plaintiff's disciplinary conviction[, which is] more than enough to satisfy due process."). Those portions of Defendants' first set of objections therefore constitute "mere reiteration[s] of [] argument[s] made to the magistrate judge," and are subject to review only for clear error. Barnes, 2013 WL 1121353, at *1. Having reviewed both the record and Judge Stewart's reasoning, the Court finds none.

However, Defendants' first set of objections also explicitly identifies two alleged failures in the Magistrate Judge's reasoning that are not related to arguments presented in the Motion to Dismiss. Those portions of the first set of objections are therefore subject to de novo review.

First, Defendants contend that the Report-Recommendation erred in declining to dismiss Plaintiff's due process claim against Greene. Objs. at 2. The Magistrate Judge made that recommendation after finding that, "[a]t this early stage of this litigation," it would be impossible to determine "what documents were and were not provided" to Plaintiff in advance of his disciplinary hearing as well as "the relevance of those [documents] allegedly not provided." R. & R. at 6. According to Defendants, the Amended Complaint expressly identifies the withheld documents as "the Unusual Incident Report and related To/From Memos, and Plaintiff's medical records," most of which were read into evidence at Plaintiff's hearing. Id. at 2–3; see also Am. Compl. at 15. Therefore, noting that due process does not require "that every document need . . . be provided to an inmate in advance of a disciplinary hearing," id. at 2, Defendants argue that the Motion to Dismiss should have been granted, since "Plaintiff cannot prove a due process

violation based on the fact that these documents were read into evidence at his disciplinary

hearing rather than being given to him in hard copy," id. at 3 (citing Freeman v. Rideout,

808 F.2d 949, 953 (2d Cir. 1986)).

The Court disagrees. The passage from Freeman cited by Defendants examines the

Supreme Court's holding in Wolff v. McDonnell, 418 U.S. 539 (1974), that

> [p]rison officials must have the necessary discretion . . . to refuse to
> call witnesses that may create a risk of reprisal or undermine
> authority, as well as to limit access to other inmates to collect
> statements or to compile other documentary evidence. . . . The
> operation of a correctional institution is at best an extraordinarily
> difficult undertaking. Many prison officials, on the spot and with the
> responsibility for the safety of inmates and staff, are reluctant to
> extend the unqualified right to call witnesses; and in our view, they
> must have the necessary discretion without being subject to unduly
> crippling constitutional impediments.

Id. at 566–67. Thus, the Wolff court determined that prison officials would not offend due

process when withholding evidence that was, for example, irrelevant or unnecessary, or that

could result in a hazardous condition. Id. at 566; see also Kingsley v. Bureau of Prisons, 937 F.2d

26, 30 (2d Cir. 1991) ("[A] prisoner's request for a witness can be denied on the basis of

irrelevance or lack of necessity."). But as the Magistrate Judge rightly pointed out, there is no

reason on the face of the Amended Complaint to believe that the documents identified by the

Amended Complaint were withheld for a permissible reason. R. & R. at 6–7. Given that they

were presented in evidence at the hearing, it is plausible that there was no good reason not to

disclose them in advance.

Moreover, even bearing in mind prison officials' need for discretion, multiple courts in

this Circuit have nonetheless held that the failure by an inmate's designated employee assistant to

provide the inmate with "specific documents that [the inmate] requested," and for which no permissible excuse existed, could give rise to a due process claim. Brooks v. Prack, 77 F. Supp. 3d 301, 316 (W.D.N.Y. 2014); see also Ayers v. Ryan, 152 F.3d 77, 81 (2d Cir. 1998) (finding that an employee assistant violated an inmate's due process rights "by undertaking to act as [the inmate's] assistant and then doing nothing to assist," including by failing to provide "any of plaintiff's requested documents"). Defendants do not provide any reason for the Court to overlook those holdings.

Furthermore, the Court rejects Defendants' argument that Plaintiff's due process rights were satisfied because the documents he requested, though not provided in advance of his disciplinary proceeding, were read into evidence during that proceeding. Defendants provide no support for such a proposition, and cite to no cases in which a court has made such a determination. Defendant's objection is therefore rejected.

Second, Defendants contest the Report-Recommendation's holding that Plaintiff's due process claim against Polizzi should survive the Motion to Dismiss. Objs. at 4. The Magistrate Judge so held for two reasons: First, "Polizzi did not remedy Greene's failure to provide documents that Plaintiff needed in support of his defense," despite the recognized right of inmates to "'present documentary evidence in [their] defense' at a prison disciplinary hearing." R. & R. at 7 (quoting Wolff, 418 U.S. at 566). Second, the Amended Complaint identified "several factors—the absence of a weapon and the lack of testimony regarding certain injuries allegedly inflicted by Plaintiff, for example—as potential grounds for concluding that there was insufficient evidence for [Polizzi's] guilty determination." Id. Defendants argue that, in coming to those conclusions, the Magistrate Judge improperly "'examin[ed] the entire record . . . [and]

6

weigh[ed] the evidence,'" Objs. at 4 (quoting Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455 (1985)), despite the Second Circuit's guidance that "a court should not overturn a prison disciplinary board's finding of guilt if there is *any* evidence to support the board's conclusion," Franco v. Kelly, 854 F.2d 584, 588 (2d Cir. 1988); see also Hill, 472 U.S. at 455 ("Ascertaining whether the 'some evidence' standard is satisfied does not require examination of the entire record, independent assessment of witnesses' credibility, or weighing of the evidence, but, instead, the relevant question is whether there is any evidence in the record to support the disciplinary board's conclusion.").

The Court agrees with Defendant that the Magistrate Judge's second rationale—regarding the insufficiency of the evidence presented at Plaintiff's hearing—does not provide a sufficient basis for allowing Plaintiff's due process claim against Polizzi to proceed. The relevant inquiry is not whether some evidence was missing from the record, but rather whether any of the evidence that was presented could support the disciplinary board's conclusion. Hill, 472 U.S. at 455. However, that finding has no bearing on the outcome of Defendants' Motion to Dismiss. Only "[u]pon determining that the[] procedural due process requirements [related to an inmate's disciplinary hearing] have been met" should a reviewing court move on to determine "'whether there is *some* evidence which supports the decision of the prison disciplinary board.'" Hamilton v. Fischer, No. 12-CV-6449, 2013 WL 3784153, *9 (W.D.N.Y. July 18, 2013) (quoting Freeman, 808 F.2d at 954–55). Before discussing the sufficiency of the evidence presented at the hearing, the Magistrate Judge had already determined on other grounds that Plaintiff properly pled that Polizzi infringed his due process rights. For that reason, Plaintiff's claim survives and Defendants' objection is rejected.

7

**B. Second Set of Objections: Retaliation—Russo and Morris**

In their second set of objections, Defendants first argue that the Report-Recommendation was wrong to find that Russo's alleged order to search Plaintiff's cell and confiscate his hot pot constituted an adverse action for First Amendment purposes. Objs. at 5; see also R. & R. at 9. Effectively, Defendants ask the Court to reconsider the Magistrate Judge's decision in light of the holding in Jones v. Harris, 665 F. Supp. 2d 384 (S.D.N.Y. 2009), rather than the "contrary case law" cited in the Report-Recommendation. In dismissing an inmate plaintiff's claim for First Amendment retaliation, the district court in Jones found that

> [p]laintiff alleges that the retaliatory searches resulted in the seizure of some of his property and the "trashing" of his cell. Perhaps he is suggesting that these searches were unusually punitive and so were out of the ordinary. But plaintiff alleges no facts tending to show that, in an ordinary random cell search, property is not seized and cells are not turned upside down and inside out[.] It is to be expected that cell searches will disrupt, not only the prisoner's life, but also the living conditions inside the cell; and since one purpose of a cell search is to locate and recover contraband, the court cannot turn a blind eye to the fact that prisoner property is sometimes seized when cells are searched.

Id. at 398. Accordingly, because "courts have long recognized that periodic cell searches are such an integral part of prison life that only cell searches that rise to the level of an Eighth Amendment violation are actionable," id., Defendants contend that the Magistrate Judge's recommendation should be modified and Plaintiff's claim dismissed, Objs. at 5.

The Court disagrees. The Jones passage quoted above is consistent with the cases cited by the Magistrate Judge. See R. & R. at 9 ("[A] retaliatory cell search accompanied by the confiscation of personal property states a plausible claim for retaliation sufficient to withstand dismissal." (internal quotation marks omitted) (citing Guillory v. Haywood, No. 13-CV-1564,

2015 WL 268933 (N.D.N.Y. Jan. 21, 2015); Yunus v. Jones, No. 16-CV-1282, 2017 WL

9511176 (N.D.N.Y. Aug. 23, 2017), report and recommendation adopted, 2017 WL 5956762

(Dec. 1, 2017))). Taken together, those cases stand for the proposition that periodic cell

searches—and any confiscation of contraband property resulting therefrom—cannot provide a

foundation for a First Amendment retaliation claim, whereas retaliatory cell searches that result

in the unwarranted confiscation of non-contraband personal property may provide such a

foundation. Therefore, because the Amended Complaint properly pleads that the Russo's cell

search was premised on retaliatory motives, Am. Compl. at 6–7 (pleading that "Russo personally

questioned [Plaintiff]" about certain grievances he had filed, and immediately thereafter "ordered

[another correctional officer] to have [Plaintiff's] cell searched" and his hot pot confiscated), and

because there is no indication in the record that Plaintiff's hot pot was contraband, Defendant's

first objection is rejected.

Defendants also object to the Magistrate Judge's holding regarding Plaintiff's retaliation

claim against Morris. Objs. at 5–6. In the Amended Complaint, Plaintiff alleged that his

correspondence privilege with his son was "abruptly discontinued" at the direction of Morris and

the "Executive Team" he led. Am. Compl. at 18–20. The Magistrate Judge accepted that

Defendants could defend against such a claim by arguing that Plaintiff's correspondence

privileges would have been revoked "regardless of any protected activity or retaliatory motive,"

but held that "discovery is needed to determine whether" that was the case. Objs. at 6 (citing

R. & R. at 10). Defendants now object that "no discovery is needed here because the [Amended]

Complaint itself . . . demonstrates that Plaintiff's correspondence privileges would have been

temporarily denied regardless of any protected activity." Id.

Defendants' argument rests on an improperly unfavorable interpretation of Plaintiff's allegations. True, the Amended Complaint states that, between April and September 2017, certain prison officials informed Plaintiff, often through formal letters using DOCCS's official letterhead, see Dkt. No. 10-1 ("Exhibits") at 15–17, that his correspondence privileges were suspended "according to Directive 4422" because the prison was unable to verify Plaintiff's relationship with his son. Am. Compl. at 20. But the Amended Complaint also describes a March 2017 incident between Plaintiff and Morris, which indicates that Morris's involvement in the suspension process may nonetheless have been motivated by retaliation, and that Plaintiff's privilege would not have been suspended absent his First Amendment activity:

> Defendant Morris . . . while doing rounds approached [Plaintiff] . . . and inquired about [Plaintiff's] approved correspondence with [his] incarcerated kids. [Plaintiff,] finding Morris['s] inquiry to be rather strange since he'[d] been approved [to engage in that correspondence,] asked why . . . there [was] a problem. Morris said yes there is [a problem], you have been writing numerous staff complaints and that needs to stop[, then] walked away.

Am. Compl. at 19. Although Dawes v. Walker, 239 F.3d 489, 491 (2d Cir. 2001) instructs courts to "approach prisoner claims of retaliation with skepticism and particular care," it remains the case that a court presented with "two plausible inferences that may be drawn from factual allegations . . . may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible." Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012). The Court therefore rejects Defendants' objection, and will allow Plaintiff's First Amendment retaliation claim against Morris to proceed.

### C. Third Set of Objections: Retaliation—McKoy

Defendants' third set of objections argues that the Report-Recommendation "ma[de] an overarching error with respect to the claim against Defendant McKoy"—which relates to McKoy's involvement in the denial of Plaintiff's correspondence privileges, Am. Compl. at 19–20—"by characterizing that claim as a retaliation claim," Objs. at 6 (citing R. & R. at 11). Instead, Defendants assert that the Court should interpret Plaintiff's claim as one for "First Amendment denial of correspondence privileges." Id. at 7. They further contend that such a claim cannot survive the Motion to Dismiss, because McKoy's "compliance with the DOCCS directive regarding correspondence privileges is demonstrated in the [Amended] Complaint and exhibits thereto." Id.

As the Court made clear in its June 7, 2018 Memorandum-Decision and Order, Dkt. No. 19 ("June Order"), "allegations that a supervisory official failed to remedy an ongoing violation of an inmate's constitutional rights after becoming aware of the violation are sufficient to plausibly suggest personal involvement in the violation," id. at 18 (citing Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)). As explained earlier, the Amended Complaint plausibly alleges that Morris terminated Plaintiff's correspondence privilege in retaliation for certain staff complaints Plaintiff had filed. Am. Compl. at 19. The Amended Complaint also pleads that McKoy failed to remedy Plaintiff's correspondence issue until November 1, 2017, despite learning of it directly from Plaintiff on September 5, 2017. Am. Compl. at 19; see also Exs. at 19, 22. Defendants have not raised any other challenges to Plaintiff's claim, and do not question whether the nature and/or duration of McKoy's delay was sufficient to satisfy Colon's failure to remedy standard. Therefore, Defendants' third set of objections is rejected.

**D. Fourth Set of Objections: Qualified Immunity**

The doctrine of qualified immunity, as explained by the Magistrate Judge in the Report-Recommendation, "provides a 'shield[] . . . from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct.'" R. & R. at 12 (quoting Reichle v. Howards, 566 U.S. 658, 664 (2012)). Thus, qualified immunity provides an affirmative offense to government officials against civil liability in the event that they have violated a right that was not "clearly established," such that it was not "sufficiently clear that every reasonable official would have understood that what [the official did] violates that right." Id.

As was true of Defendant's first set of objections, many of the arguments raised in Defendants' fourth set of objections—regarding qualified immunity—are identical to those presented in the Motion to Dismiss. Compare Mot. Dismiss at 23 ("There is no clearly established law stating that Plaintiff must be provided with copies of specific documents."), with Objs. at 8 ("It is not clearly established that Plaintiff was required to be provided with the specific documents he identifies."), and Mot. Dismiss at 25 ("[T]he law is clearly established that Plaintiff cannot prove a retaliation claim when the legitimate motives for Morris's action are set forth in the pleadings and demonstrate that Morris would have taken the same actions regardless of any grievances Plaintiff may have filed."), with Objs. at 9–10 ("The law is clearly established that a plaintiff cannot prove a retaliation claim when the defendant would have taken the same actions regardless of any grievances the plaintiff may have filed. Here, the legitimate motives for Morris's action are set forth plainly in the pleadings."). Those arguments are therefore subject to review only for clear error; the Court finds none.

However, Defendants also raise two new arguments not considered by the Magistrate Judge. First, they contend that the Report-Recommendation erred in finding that Russo was not entitled to qualified immunity on Plaintiff's First Amendment retaliation claim, because there is "no clearly established law" that Russo allegedly violated. Objs. at 9. In support of that argument, Defendants once again refer to Jones for the proposition that "the search of Plaintiff's cell and [the] confiscation of his hot pot . . . was not an adverse action." Id. But Defendants now argue that the discrepancies between Jones and the cases cited by the Magistrate Judge (e.g., Guillory and Yunus), "only emphasize[] that there is no clearly established law governing the issue," meaning qualified immunity should apply. Id. (internal citation omitted). However, the Court has already determined that the holdings in Jones, Guillory, and Yunus are consistent, and that the Amended Complaint sufficiently pleads a claim pursuant to the standards they have set. See supra Part III.B. As a result, there are no discrepancies in the caselaw that would have rendered its application sufficiently unclear for qualified immunity purposes. Defendants' objection is therefore rejected.

Second, Defendants argue that "McKoy is entitled to qualified immunity because no clearly established law holds that he was required to approve Plaintiff's correspondence request." Objs. at 10. The Court agrees that McKoy is entitled to qualified immunity and that the Magistrate Judge erred in finding otherwise, but not for the reasons Defendants cite. McKoy's liability under the First Amendment depends on the Colon test, which provides that the personal involvement of a supervisory defendant is established if

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the

13

defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [plaintiffs] by failing to act on information indicating that unconstitutional acts were occurring.

58 F.3d at 873. As made clear above, the second of those five categories applies in McKoy's case. See supra Part III.C. However, the Supreme Court's decision in Ashcroft v. Iqbal, 556 U.S. 662 (2009), "engendered conflict within our Circuit about the continuing vitality of the supervisory liability test set forth in Colon," Reynolds v. Barrett, 685 F.3d 193, 205 n.14 (2d Cir. 2012). On the one hand, some courts have found that "[o]nly the first and part of the third Colon categories pass Iqbal's muster," Bellamy v. Mt. Vernon Hosp., No. 07-CV-1801, 2009 WL 1835939, at *6 (S.D.N.Y. June 26, 2009), while others have held that "all five categories under Colon are still valid unless and until the Second Circuit holds otherwise," Aponte v. Fischer, No. 14-CV-3989, 2018 WL 1136614, at *8 n.5 (S.D.N.Y. Feb. 28, 2018).

As applicable to Defendants' qualified immunity defense, the uncertainty inherent in the continued viability of the Colon test implies that "regardless of whether Colon's second category of supervisory liability survived Iqbal . . . , [D]efendants are entitled to qualified immunity based on the very uncertainty of the governing law." Ojo v. United States, No. 15-CV-6089, 2018 WL 3863441, at *10 (E.D.N.Y. Aug. 14, 2018). The Court therefore finds that McKoy is entitled to qualified immunity on Plaintiff's First Amendment retaliation claim, and will modify the Report-Recommendation to that effect.

14

## IV. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Report-Recommendation (Dkt. No. 39) is **APPROVED and ADOPTED in part**; and it is further

**ORDERED**, that Defendants' Motion to Dismiss (Dkt. No. 30) is **GRANTED in part and DENIED in part**; and it is further

**ORDERED**, that Plaintiff's First Amendment retaliation claim against McKoy is **DISMISSED**; and it is further

**ORDERED**, that defendant McKoy is **DISMISSED** from this action; and it is further

**ORDERED**, that Plaintiff's Fourteenth Amendment due process claims against Polizzi and Greene, as well as Plaintiff's First Amendment retaliation claims against Russo and Morris, **SURVIVE** Defendants' motion; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order on the parties in accordance with the local rules.

**IT IS SO ORDERED.**

DATED:      December 06, 2018
            Albany, New York

Lawrence E. Kahn
U.S. District Judge