UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

TREVIS L. FUNCHES,

                                Plaintiff,

                                                          9:17-CV-1292
            v.                                            (LEK/DJS)

ANTHONY RUSSO, *Deputy Supt. For Security;*
*Eastern NY Corr. Fac.*, *et al.*,

                                Defendants.

APPEARANCES:                              OF COUNSEL:

TREVIS L. FUNCHES
Plaintiff, *Pro Se*
02-A-2668
Five Points Correctional Facility
Caller Box 119
Romulus, NY 14541

HON. LETITIA JAMES                        HELENA LYNCH, ESQ.
Attorney General of the State of New York  Assistant Attorney General
Attorney for Defendants
200 Old Country Road
Suite 240
Mineola, NY 11501

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

### I.  INTRODUCTION

    *Pro se* Plaintiff Trevis Funches brought this civil rights action, pursuant to 42

U.S.C. § 1983, alleging that his constitutional rights were violated while he was in the

custody of the Department of Corrections and Community Supervision ("DOCCS") at

Eastern Correctional Facility.  Dkt. No. 10, Am. Compl.  Following initial review of his Amended Complaint, the Court allowed the following claims to proceed: (1) Fourteenth Amendment due process claims against Polizzi and Greene arising out of Plaintiff's July 2017 disciplinary hearing; (2) a First Amendment retaliation claim against Russo arising out of Plaintiff's 2015 grievance; and (3) First Amendment retaliation claims against Morris and McKoy arising out of Morris' revocation of Plaintiff's correspondence privileges with his family members.  Dkt. No. 19.  Defendants then moved to dismiss the Amended Complaint, and the District Court granted the motion in part, dismissing Plaintiff's claim against Defendant McKoy.  Dkt. No. 43.

Plaintiff has now moved for summary judgment, arguing there is no genuine issue of material fact as to any of his claims.  Dkt. No. 55.  Defendants have opposed Plaintiff's Motion, and have cross-moved for summary judgment.  Dkt. No. 81.  Plaintiff, for his part, has opposed Defendants' Motion, Dkt. No. 87, Pl.'s Opp., and Defendants have submitted a Reply, Dkt. No. 88.  For the following reasons, the Court recommends that Plaintiff's Motion for Summary Judgment be denied, and that Defendants' Motion for Summary Judgment be granted in part and denied in part.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact.

*F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin,* 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc*., 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court

must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995).  Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III.  PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

In Plaintiff's Motion for Summary Judgment, he restates the allegations in his Amended Complaint.  Dkt. Nos. 55 & 55-1.  Plaintiff does not submit any evidence in support of his Motion aside from a document labeled an "affidavit in support of summary judgment motion," in which he largely argues the validity of the allegations in his Complaint.  Dkt. No. 55-1.

"Summary judgment may be granted only if the submissions of the parties taken together 'show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Heyliger v. Trombley*, 2016 WL 11480156, at *3 (N.D.N.Y. June 9, 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986) & FED. R. CIV. P. 56(c)).  The moving must demonstrate, through admissible evidence, that there is no genuine issue of material fact.  *F.D.I.C. v. Giammettei*, 34 F.3d at 54 (quoting *Celotex Corp. v. Catrett*, 477 U.S. at 323); *Salahuddin v. Goord*, 417 F.3d 263, 272-73 (2d Cir. 2006).

Because Plaintiff has not submitted any evidence with his Motion and has only reiterated the facts alleged in his Complaint with some conclusory argument, Plaintiff has

not met his burden on his Motion.  The Court therefore recommends denying Plaintiff's

Motion for Summary Judgment.

### IV. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

#### A.  Plaintiff's Response to Defendants' Statement of Material Facts

In their Reply, Defendants assert that the facts asserted in their Statement of

Material Facts should be deemed admitted because Plaintiff failed to respond to their

Statement of Material Facts.  Dkt. No. 88 at pp. 2-3.  Plaintiff failed to submit a Statement

of Material Facts in support of his Motion, and also did not respond to Defendants'

Statement of Material Facts in his opposition to their Motion.

The Northern District of New York's Local Rules provide that a party opposing a

motion for summary judgment must file a response to the moving party's Statement of

Material Facts, mirroring the movant's "by admitting and/or denying each of the movant's

assertions in a short and concise statement, in matching numbered paragraphs.  Each

denial shall set forth a specific citation to the record where the factual issue arises."

N.D.N.Y. L.R 7.1(a)(3).  Those Rules further provide that "[t]he Court shall deem

admitted any properly supported facts set forth in the Statement of Material Facts that the

opposing party does not specifically controvert." *Id.*

However, the Second Circuit, acknowledging a court's broad discretion to

determine whether to overlook a failure to comply with local rules, has held that the court

may in its discretion opt to conduct a review of the entire record even where one of the

parties has failed to file a Rule 7.1 statement of material facts.  *Holtz v. Rockefeller &*

*Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001); *see also Jackson v. Fed. Exp.*, 766 F.3d 189,

194 (2d Cir. 2014) (noting that "the court may rely on other evidence in the record even if uncited" in determining the undisputed material facts).  Here, considering Plaintiff's *pro se* status, the Court will review the entire summary judgment record to ascertain the undisputed material facts, citing to the facts as set forth in Defendants' Rule 7.1 Statement of Facts when properly supported by the record, and also referring to Plaintiff's submissions when practicable.  *See GlobalRock Networks, Inc. v. MCI Commc'ns Servs., Inc.*, 943 F. Supp. 2d 320, 329 (N.D.N.Y. 2013) ("Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions.") (citing *Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003)).

### B.  Plaintiff's Claim Against Defendant Russo

Plaintiff alleges in his Amended Complaint that Defendant Russo retaliated against him for filing grievances regarding missing personal property, which Defendant Russo was investigating.  Am. Compl. at pp. 6-7.  He alleges that as part of Defendant Russo's investigation, he questioned Plaintiff regarding the grievances, and yelled at him "why the fuck do I have ten (10) pages of write-up on my desk?"  *Id.*  Plaintiff alleges that Defendant Russo then turned to Officer Menard and ordered him to have his cell searched and to take his hot pot.  *Id.*  In his deposition, Plaintiff elaborated that Defendant Russo retaliated against him because he had filed grievances against DOCCS staff Tacti and Bunce.  Dkt. No. 81-26, Pl.'s Dep., pp. 17-20.  He filed these grievances because his property had gone missing when he had been placed in SHU.  *Id.*  He explained that those

grievances ended up on Defendant Russo's desk, and that Russo and Menard then questioned him when he was coming back from the yard, as described above, resulting in the retaliatory cell search. *Id.* at p. 21. Plaintiff alleges Defendant Russo was upset because Plaintiff's grievances had resulted in a lieutenant getting him a hot pot, and that he retaliated against him because of the ten pages of write up that was on his desk. *Id.* at pp. 22-23. Defendants contend that Plaintiff failed to grieve his claims against Defendant Russo. Dkt. No. 81-1, Defs.' Mem. of Law, pp. 7-10.

### 1. Exhaustion Procedure

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Id.* at 524; *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (stating that the mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). Furthermore, § 1997e(a) requires "proper exhaustion," which means using all steps of the administrative process and complying with "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). The defendant bears the burden of proving that the administrative

remedies available to the plaintiff were not exhausted prior to the initiation of a civil action. *Howard v. Goord*, 1999 WL 1288679, at *3 (E.D.N.Y. Dec. 28, 1999).[1]

In New York, the administrative remedies consist of a three-step Inmate Grievance Program ("IGP"). First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b). An inmate must submit a grievance "within 21 calendar days of the alleged occurrence." *Id.* at § 701.5(a). An inmate may request an extension of the time limit within forty-five days of the date of the alleged occurrence. *Id.* at § 701.6(g). The IGRC reviews and investigates the formal complaint and then issues a written determination. *Id.* at § 701.5(b). Second, upon appeal of the IGRC decision, the superintendent of the facility reviews the IGRC's determination and issues a decision. *Id.* at § 701.5(c). Finally, upon appeal of the superintendent's decision, the Central Office Review Committee ("CORC") makes the final administrative determination. *Id.* at § 701.5(d). Only upon exhaustion of all three levels of review may a prisoner seek relief in federal court. *Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia*, *Porter v. Nussle*, 534 U.S. at 524); *see also Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.

---

[1] Exhaustion of administrative remedies is an affirmative defense which must be raised by the defendant. *See Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999). Defendants properly raised the affirmative defense in their Answer to the Amended Complaint. Dkt. No. 45 at p. 7.

## *2. Whether Plaintiff Failed to Exhaust*

In their Motion, Defendants assert that "none of the six grievances filed by Plaintiff in 2015 contains any allegation of anything resembling a retaliatory search by Russo in July 2015." Defs.' Mem. of Law at p. 9.

Defendants submit the six grievances that Plaintiff filed in 2015. The first, ECF-26285-15, was filed on April 29, 2015, and is titled "Adjust Raises with Inflation," and suggests that inmates should receive a pay raise due to the inflation of items sold in the commissary. Dkt. Nos. 81-8 & 81-9. The second, 26322-15, involves consolidated grievances filed in May and June of 2015 about staff not providing inmates placed in SHU their property within 72 hours of their arrival, and not providing them the full property that they are entitled to. Dkt. Nos. 81-8 & 81-10. Plaintiff's third 2015 grievance, 26325-15, was filed on May 28, 2015, and alleges that Officers Bunce and Tacti improperly claimed that Plaintiff possessed drugs. Dkt. Nos. 81-1 & 81-11. The next grievance, 26465-15, was filed on September 1, 2015, and alleges that Plaintiff's property was lost. Dkt. Nos. 81-1 & 81-12. Fifth, Grievance 26532-15 was filed on October 9, 2015, and pertains to issues regarding a fee charged for mail and a letter that was returned as "unable to forward." Dkt. Nos. 81-1 & 81-14. None of these five grievances have anything to do with Plaintiff's allegations against Defendant Russo in the Amended Complaint. In addition, none of these grievances were filed within the time frame that a grievance would need to be filed to be timely for an event that occurred in July 2015, which would be sometime between July 21, 2015 and August 21, 2015.

Grievance number 26495-15 was filed on September 16, 2015, and states that it is regarding a September 14, 2015 incident. Dkt. No. 81-13. In this grievance, Plaintiff describes the incident as follows:

> DSS Russo approached grievant at the yard go-back for South hall and became very belligerent requesting of grievant "why the fuck do I have a[] ten (10) page letter on his desk?" Grievant was unaware and said the same. D.S.S. Russo approach was based on entitled claim #100-0018-15 grievant correctly filed based upon the theft of his personal property when he was taken to segregation. Among items taken was his "Hot Pot." Supt. Lee granted claim in part and a Hot Pot was issued accordingly with authorize receipt. DSS Russo demanded subordinates to take Hot Pot.

*Id.* This grievance appears to deal with the exact allegations in Plaintiff's Amended Complaint, except that the grievance stated the incident occurred in September rather than July.

This grievance was filed on September 16, 2015, and the incident allegedly occurred sometime in July of 2015. Defendants do not specifically address the substance of this grievance, apparently discounting it based on this difference between the date of the incident and the date of the grievance. *See* Defs.' Mem. of Law at p. 9. This grievance, especially when the facts are viewed in the light most favorable to Plaintiff, appears to directly relate to the claim lodged against Defendant Russo. Absent some argument as to why this grievance was insufficient to exhaust this claim, Russo has failed to carry his burden of showing that Plaintiff failed to exhaust. *Grayson v. Courtney*, 2017 WL 4083146, at *4 (N.D.N.Y. Aug. 22, 2017), *report and recommendation adopted*,

2017 WL 4083160 (N.D.N.Y. Sept. 14, 2017) (defendant bears "burden to establish the affirmative defense of failure to exhaust").[2]

### C.  Plaintiff's Claim Against Defendant Greene

Plaintiff alleged in his Amended Complaint that Defendant Greene was his assigned employee assistant, and that he failed to provide him certain documents that he requested in advance of a disciplinary hearing for his involvement in a fight with another inmate, which were necessary for him to prepare his defense.  Am. Compl. at pp. 14-15.

#### 1.  *Collateral Estoppel*

Defendants first contend that Plaintiff's claims are barred by collateral estoppel because the matters at issue in this case were already litigated in an Article 78 action brought by Plaintiff.  Defs.' Mem. of Law at pp. 10-13.  In his Amended Complaint, Plaintiff alleges that Defendant Greene failed to provide him with the unusual incident report, to/from reports, and his medical reports; the hearing officer read several to/from reports and the Unusual Incident Report to Plaintiff at the hearing, but Plaintiff alleges he was unable to meaningfully review them prior to his hearing to prepare a defense.  Am. Compl. at pp. 14-15.

"Under New York law, issue preclusion only applies if (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first

---

[2] A hearing could be held to resolve whether this grievance does indeed pertain to Plaintiff's claim and whether he exhausted his administrative remedies; however, in this Court's view, on this record Defendants have failed to raise an issue of fact as to exhaustion.  *See Messa v. Goord*, 652 F.3d 305 (2d Cir. 2011).

proceeding." *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995). "The party asserting issue preclusion bears the burden of showing that the identical issue was previously decided." *Id.*

There is no dispute that Plaintiff litigated and lost an Article 78 proceeding in state court regarding the same disciplinary proceeding at issue here. *Funches v. State of New York Dep't of Corr. & Community Supervision*, 163 A.D.3d 1390 (3d Dep't 2018), *leave to appeal denied*, 32 N.Y.3d 1140 (2019). Here, however, Defendants only conclusorily assert that the requirements for issue preclusion have been established. *See* Defs.' Mem. of Law at p. 12. As noted by this district, this is insufficient:

> [B]ecause Defendants have not submitted Plaintiff's Article 78 petition or the briefs filed by the parties in that proceeding, the Court has only the Third Department Opinion in the Article 78 for consideration in assessing whether [Defendants are] entitled to dismissal of Plaintiff's due process claim on collateral estoppel grounds. Having reviewed the Opinion, the Court concludes that it does not provide sufficient information to determine the applicability of the doctrine.

*Quezada v. Fischer*, 2016 WL 11478236, at *6 (N.D.N.Y. Feb. 16, 2016), *report and recommendation adopted*, 2016 WL 1118451 (N.D.N.Y. Mar. 22, 2016). Similarly, I recommend that Defendants' Motion based on the argument that Plaintiff's claims against Defendant Greene are barred by collateral estoppel be denied.

### 2. Merits of Plaintiff's Claim

Plaintiff alleges that Defendant Greene violated his due process rights because he failed to provide Plaintiff adequate assistance in preparing for his disciplinary hearing. The Amended Complaint alleges that Defendant Greene failed to provide him with the unusual incident report, to/from reports, and his medical reports. Am. Compl. at pp. 14-

15.   The evidence shows that Plaintiff requested (1) the Unusual Incident Report describing the incident leading to his misbehavior report; (2) the specific rule violations alleged against him; (3) any "to/froms," or officers' memoranda regarding the incident that led to Plaintiff's misbehavior report; (4) certain DOCCS directives; and (5) pages from the inmate rule book.  Dkt. No. 81-16; Dkt. No. 81-5, Greene Decl. at ¶ 11.

Defendant Greene states in his declaration that he could not give Plaintiff a copy of the Unusual Incident Report because it contained confidential medical information and identifying information regarding another inmate, which Plaintiff was not entitled to possess.  Greene Decl. at ¶ 12.  He states that he did read aloud to Plaintiff the non-confidential parts of the document, however.  *Id.*  The assistant request form also states that Defendant Greene read the unusual incident report to Plaintiff, but Plaintiff denies that he did.  Dkt. No. 81-16; Pl.'s Dep. at p. 37.  Defendant Greene states that the alleged rule violations were provided to Plaintiff in his misbehavior report.  Greene Decl. at ¶ 13. He further asserts that he did not provide Plaintiff copies of the officers' to/from memos because they contained confidential information about another inmate, and because it could present a security risk because the memos contained information regarding the officers' response to a fight and contained confidential security information.  *Id.* at ¶ 14. He did not read aloud the to/froms to Plaintiff for those security reasons.  *Id.*  Defendant Greene states that he gave Plaintiff the two directives that he requested, and the pages he requested from the inmate rule book.  *Id.* at ¶ 15.  He attests that he used his best efforts to provide Plaintiff with the documents he requested.  *Id.* at ¶ 16.

Inmates are constitutionally entitled to an assistant when they are confined to SHU; in such cases, "the assistant must do what the plaintiff would have done if he were able." *Ford v. Fischer*, 2011 WL 856416, at *8-9 (N.D.N.Y. Jan. 31, 2011), *report and recommendation adopted*, 2011 WL 846860 (N.D.N.Y. Mar. 9, 2011). This right to assistance is, therefore, limited. *Id.* at *9. Defendant Greene obtained for Plaintiff the documents that he requested that were not confidential and did not raise security concerns. *See* Greene Decl. Those that he withheld, he did so due to security and confidentiality concerns. *Id.* Plaintiff has raised no genuine issue of material fact as to this point. *See Grant v. Fischer*, 2017 WL 1277494, at *7 (N.D.N.Y. Mar. 10, 2017), *report and recommendation adopted*, 2017 WL 1180866 (N.D.N.Y. Mar. 29, 2017); *Clyde v. Bellnier*, 2010 WL 1489897, at *6 (N.D.N.Y. Apr. 13, 2010). As such, the Court recommends that Defendants' Motion be granted as to Defendant Greene, and the Court therefore does not reach Defendants' contentions that Defendant Greene is entitled to qualified immunity.

### D. Plaintiff's Claim Against Defendant Polizzi

Plaintiff alleges in his Amended Complaint that Defendant Polizzi failed to remedy Defendant Greene's failure to provide documents, and that Defendant Polizzi denied him due process because there was insufficient evidence to find him guilty. Am. Compl. at pp. 15-17.

Defendants first argue that Plaintiff's claims against Defendant Polizzi are barred by collateral estoppel. The Court recommends denying the Motion on that basis for the reasons discussed above in connection with Defendant Greene.

As for Plaintiff's claim that his due process rights were violated because he was not provided certain documents, Defendant Polizzi read into the record the unusual incident report.  Dkt. No. 81-19 at pp. 4-5.  Defendant Polizzi read Plaintiff the misbehavior report, and all of the to/froms in his possession, including one from Sergeant Vanacore to Lieutenant McMeneny, and one from Officer Cruz to Lieutenant McMeneny. *Id.* at pp. 2, 9-11, & 19-20.  Plaintiff asserts that he was not given a meaningful opportunity to review the documents that were read into the record.

"To establish a procedural due process claim in connection with a prison disciplinary hearing, an inmate must show that he was prejudiced by the alleged procedural errors, in the sense that the errors affected the outcome of the hearing." *Clark v. Dannheim*, 590 F. Supp.2d 426, 429 (W.D.N.Y. 2008) (citing *Powell v. Coughlin*, 953 F.2d 744, 750 (2d Cir. 1991)).  In his deposition, Plaintiff stated that the unusual incident report may have identified inmates who could have testified at the hearing, and the officers' memos may have identified officers who witnessed the fight.  Pl.'s Dep. at pp. 48 & 54.  However, the unusual incident report did not name any inmates aside from the inmate involved in the fight, and the only officers that the memos identified as witnessing the fight did testify at the hearing.  Dkt. No. 81-19 at pp. 4-5, 9-10, & 19-20.  As such, Plaintiff has failed to raise a genuine issue of material fact as to whether his not being provided copies of the documents in advance of the hearing could have affected the outcome of the hearing.

Turning to the sufficiency of the evidence, due process requires that a guilty finding on a disciplinary hearing be supported by at least "some evidence." *Kalwasinski*

*v. Morse*, 201 F.3d 103, 108 (2d Cir. 1999).  The Court looks to "whether there was 'reliable evidence' of the inmate's guilt." *Luna v. Pico*, 356 F.3d 481, 488 (2d Cir. 2004). In his disposition, Defendant Polizzi listed the items upon which he relied, which included: the misbehavior report authored by Corrections Officer Cruz and endorsed by Corrections Officer Almistica; testimony of Corrections Officers Cruz and Almistica confirming facts supporting the allegations in the misbehavior report; testimony of Sergeant Vanacore; testimony of Corrections Officer JR Meinecke; the testimony of two inmates; the preliminary unusual incident report with memoranda summarized on the record; and witness descriptions of violent conduct which Plaintiff admitted to.  Dkt. No. 81-19 at pp. 28-29.  Defendant Polizzi found Plaintiff's claims of self-defense to be disingenuous, unsupported by any facts presented, and incredible.  *Id.*  This evidence satisfies the "some evidence" standard for the guilty determination rendered.  *See Kotler v. Daby*, 2013 WL 1294282, at *10 (N.D.N.Y. Mar. 28, 2013) (collecting cases).  The Court therefore recommends that Plaintiff's claims against Defendant Polizzi be dismissed, and does not reach Defendants' argument that Defendant Polizzi is entitled to qualified immunity.

### E.  Plaintiff's Claim Against Defendant Morris

Plaintiff alleges in his Amended Complaint that Defendant Morris retaliated against him for prior complaints against correctional staff by denying him the ability to correspond with family members who are incarcerated.  Am. Compl. at pp. 18-20.

"To prevail on a First Amendment retaliation claim, an inmate must establish '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse

action against the plaintiff, and (3) that there was a causal connection between the protected conduct and the adverse action.'" *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (quoting *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009)). The plaintiff must establish that "the protected conduct was a substantial or motivating factor" behind the retaliatory action. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). The Second Circuit has warned that "courts must approach prisoner claims of retaliation with skepticism and particular care." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citing *Flaherty v. Coughlin*, 713 F.2d at 13). This is true because retaliation claims are "easily fabricated" and as a result "virtually any adverse action taken against a prisoner by a prison official - even those otherwise not rising to the level of a constitutional violation - can be characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d at 491.

Defendant Morris is a Deputy Superintendent for Program Services within DOCCS, and has been assigned to Eastern New York Correctional Facility since December 29, 2016. Dkt. No. 81-6, Morris Decl., ¶¶ 1-2. In that position, she oversees authorizations for inmate correspondence, which must comply with DOCCS Directive 4422. *Id.* at ¶¶ 3 & 4. She details that in March of 2017, Eastern received a request from the South Carolina Department of Corrections ("SCDOC") on behalf of an inmate for correspondence privileges with Plaintiff, stating that he and Plaintiff are son and father, seeking to verify that relationship with DOCCS' records. *Id.* at ¶¶ 5-6. Defendant Morris states that she directed staff at Eastern to check Plaintiff's records to obtain verification of the relationship, and staff did not find anything in his records to verify the relationship;

Defendant Morris informed SCDOC that Eastern did not locate any records that would confirm the relationship. *Id.* at ¶¶ 7-9. Plaintiff's counselor advised him that the relationship had not been verified, and Defendant Morris asked Plaintiff to provide his counselor with any records that would confirm the relationship. *Id.* at ¶¶ 10 & 13. Plaintiff told Defendant Morris that the SCDOC inmate had previously visited him at Eastern and that he had previously corresponded with him, which should be part of his record; Defendant Morris advised Plaintiff that the previous correspondence occurred while Plaintiff was housed at another DOCCS facility, and that the familial verification was not on file. *Id.* at ¶¶ 14-15.

Defendant Morris states that she was not aware of any grievances filed by Plaintiff against supervisory staff, and that even if she had been, she would have been required to follow policy and deny the permission. *Id.* at ¶¶ 16-17. Defendants therefore assert that Plaintiff's claim must be dismissed because he cannot prove a causal connection between the protected conduct and the alleged retaliatory behavior. Defs.' Mem. of Law at pp. 19-22.

Initially, Plaintiff claims that Defendant Morris caused all of Plaintiff's correspondence with his kids to be unjustifiably discontinued, and that she "had each letter to mentioned sons returned." Am. Compl. at p. 19. While Plaintiff also asserts in his opposition to Defendants' Motion that Defendant Morris discontinued his contact with multiple children, Pl.'s Opp. at p. 7, it appears that Plaintiff's claim in fact only pertains to correspondence with the individual in SCDOC, discussed above. The only evidence submitted with the Amended Complaint or the Motions that pertain to this claim deal with

this individual in March of 2017.  *See* Am. Compl. at p. 19; Dkt. No. 10-1 at pp. 15-17;

Dkt. Nos. 81-22, 81-23, & 81-24.

Defendants have submitted the request from SCDOC, as well as correspondence

between Defendant Morris and SCDOC.  Dkt. Nos. 81-22, 81-23, & 81-24.  Plaintiff has

submitted correspondence from his counselor, a non-party, stating that she was unable to

verify the relationship, either by reviewing Plaintiff's file or through SCDOC.  Dkt. No.

10-1 at p. 15.  On this record, Defendant has demonstrated that she would have taken the

same action in the absence of a retaliatory motive.  As such, the Court recommends that

the Motion be granted as to this claim.  *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir.

2003) (if plaintiff makes a showing that he engaged in constitutionally protected conduct

and that it was a substantial and motivating factor for the adverse action taken, defendant

"may evade liability if it demonstrates that it would have [taken the adverse action] even

in the absence of the protected conduct.") (internal quotation marks omitted) (citations

omitted).  The Court therefore does not reach Defendants' contentions that Defendant

Morris is entitled to qualified immunity.

## V.  CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED**, that Plaintiff's Motion for Summary Judgment (Dkt. No. 55)

be **DENIED**; and it is further

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No.

81) be **GRANTED IN PART AND DENIED IN PART**; and it is further

**RECOMMENDED**, that Plaintiff's claim against Defendant Russo be permitted to proceed; and is further

**RECOMMENDED**, that Plaintiff's claims against Defendants Morris, Greene, and Polizzi be **DISMISSED**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[3] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Dated:   September 16, 2020
       Albany, NY

Daniel J. Stewart
U.S. Magistrate Judge

---

[3] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).